UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DZEMILA TOPALOVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-962-ERW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying the application of Dzemila

Topalovic ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint

(ECF No. 18) and Defendant has filed a brief in support of the Answer, along with a Statement

of Uncontroverted Material Facts (ECF No. 23).

## I.  Procedural History

Plaintiff filed her application for DIB under Title II of the Social Security Act on

September 26, 2014.  (Tr. 138-44)  Plaintiff claimed she became disabled on August 11, 2011

because of a heart condition, knee problems, and frequent dizziness.  (Tr. 65)  Plaintiff was

initially denied relief on December 10, 2014. (Tr. 73-78)  At Plaintiff's request, a hearing was

---

[1] Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting
Commissioner Nancy A. Berryhill as the Defendant in this suit.  No further action needs to be
taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

held before an Administrative Law Judge ("ALJ") on October 24, 2016, at which Plaintiff, one witness, and a vocational expert testified. (Tr. 83, 32-64)  After the hearing, by a decision dated July 18, 2017, the ALJ found Plaintiff was not disabled. (Tr. 16-26)  On April 18, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6)  Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues: (1) the ALJ erred in failing to properly evaluate the opinion of Plaintiff's treating physician, Dr. Farzana;( 2) the ALJ erred in failing to properly evaluate the Plaintiff's complaints of pain; and (3) the ALJ erred in failing to properly consider the Plaintiff's obesity.

For the reasons that follow, the ALJ did not err in her determination.

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, the Court notes Plaintiff did not file a Statement of Uncontroverted Facts. However, Plaintiff's Brief thoroughly summarizes Plaintiff's hearing testimony and the medical evidence in the record, which the Court adopts. (ECF No. 18) The Court also adopts the facts set forth in the Commissioner's Statement of Uncontroverted Material Facts (ECF 23-1) and notes they are unrefuted by Plaintiff. Together, evidence set forth in Plaintiff's Brief and the Commissioner's statement provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## III. Discussion

**A. <u>Legal Standard</u>**

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a

significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

**B. The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017, and she had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2011 through the date last insured. (Tr. 18) The ALJ found Plaintiff's mild patellofemoral osteoarthritis of both knees, status post meniscal tear of the right knee, coronary

artery disease, status-post percutaneous revascularization, obesity, anxiety disorder, and depression were severe impairments, but these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19)[2]  Specifically, the ALJ analyzed Plaintiff's eligibility for Listing 12.04 (Affective Disorder) and Listing 12.06 (Anxiety Related Disorders).

The ALJ found through March 31, 2017, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(a), except Plaintiff should

> never be required to operate foot controls bilaterally. She should never be required to climb a ladder, rope or scaffold and she should never be required to crawl. She can only occasionally climb ramps and stairs, balance, stoop, kneel and crouch. She should never be required to work near unprotected heights, nor should she be required to operate a motor vehicle. She can perform simple, routine tasks in an environment involving frequent interaction with supervisors and co-workers and only occasional contact with the public.

(Tr. 20)  In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding her abilities, conditions and activities of daily living. While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, she also found Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 21)

The ALJ determined this RFC did not preclude Plaintiff from performing her past relevant work as an assembler.  (Tr. 24)  Further, considering Plaintiff's RFC and her age, education, and work experience, the ALJ found vocational expert testimony supported a conclusion that Plaintiff could perform work as it exists in significant numbers in the national

---

[2] The ALJ additionally found that Plaintiff's asthma, hypertension, hyperlipidemia, and gastroesophageal reflux disease ("GERD") were non-severe.  (Tr. 19)  Plaintiff does not challenge these findings.

economy, and specifically, as a dining room attendant, janitorial worker, and restaurant worker. (Tr. 24-25)  The ALJ therefore found Plaintiff was not under a disability at any time from August 1, 2011, her alleged onset date, through March 31, 2017, the date she was last insured.  (Tr. 25)

## C.  <u>Analysis of Issues Presented</u>

In her initial brief to this Court, Plaintiff argued: (1) the ALJ erred in failing to properly evaluate the opinion of Plaintiff's treating physician, Dr. Farzana; (2) the ALJ erred in failing to properly evaluate the Plaintiff's complaints of pain; and (3) the ALJ erred in failing to properly consider the Plaintiff's obesity.  (ECF No. 18 at 3-11).  The Court addresses each of Plaintiff's proffered issues below.

### 1.  The ALJ Failed to Properly Evaluate Opinion Evidence

In determining whether a claimant is disabled, medical opinions are considered by the ALJ together with the rest of the relevant evidence received.  20 C.F.R. § 404.1527(b).  The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors.  20 C.F.R. § 404.1527(c).  Generally, more weight is given to opinions of sources who have treated a claimant, and to those who are treating sources.[3]  20 C.F.R. § 404.1527(c)(2); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).  The regulations provide that a treating source's opinion on the issue of the nature and severity of the impairment is to be given controlling weight, where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2). Where controlling weight is not given to a treating source's

---

[3] The regulations describe a treating source as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1527(a)(2).  The parties do not dispute Dr. Farzana is a "treating source."

opinion, it is weighed according to the § 404.1527(c) factors enumerated above. *Shontos*, 328 F.3d at 426.

Plaintiff argues the ALJ's decision should be reversed and remanded, as the ALJ erred in evaluating the medical opinions by giving Dr. Farzana's opinion only "minimal weight," instead of the controlling weight it deserved pursuant to 20 C.F.R. § 404.1527(c)(2). Dr. Farida Farzana, Plaintiff's treating psychiatrist, provided a Mental Residual Functional Capacity Questionnaire dated October 19, 2016. Dr. Farzana indicated that Plaintiff took medications, remained anxious and depressed, experienced problems sleeping, and had heart problems. (Tr. 690) Dr. Farzana checked several boxes on this statement consistent with symptoms of depression and anxiety and opined that Plaintiff's prognosis was guarded. (Tr. 691) Dr. Farzana also checked all boxes stating Plaintiff was unable to meet competitive standards in a regular work setting with respect to the mental abilities and aptitudes needed to do unskilled work, semiskilled work, and particular types of jobs. (Tr. 692-93) Dr. Farzana did not provide explanations for these opinions.

After reviewing the evidence of record, as well as testimony regarding Plaintiff's self-reported level of functioning, the ALJ concluded evidence did not support Dr. Farzana's restrictive limitations, which were "wholly out of proportion to [Plaintiff's] activity level." (Tr. 23) In further explaining why she accorded less weight to Dr. Farzana's opinion, the ALJ noted Dr. Farzana maintained Plaintiff on the same medications and dosages for a long period of time; Plaintiff had never been hospitalized or undergone inpatient mental treatment; and Dr. Farzana recommended Plaintiff receive only limited treatment once every three months for 30-minute time periods. (Tr. 23-24) The ALJ found the limited level of treatment to be inconsistent with the very extreme limitations set forth by Dr. Farzana on the questionnaire. (Tr. 24)

The ALJ's conclusions are borne out by the Court's review of the record. Substantial medical evidence on the record supports the ALJ's finding of no more than moderate limitations, versus more severe limitations, with respect to Plaintiff's mental impairments. (Tr. 19-20, 23-24, 692-93) In Dr. Farzana's October 2016 mental RFC questionnaire, she noted, *inter alia*, loss of interest, decreased energy, generalized persistent anxiety, mood disturbance, difficulty concentrating, persistent disturbances of mood or effect, emotional withdrawal or isolation, persistent irrational fear, motor tension, and memory impairment. (Tr. 691) Based on these symptoms, Dr. Farzana opined that Plaintiff was unable to meet competitive standards in any of the listed activities related to unskilled, skilled, or particular types of jobs. (Tr. 692) Dr. Farzana did not explain her opinions but indicated that Plaintiff's psychiatric condition exacerbated her pain or other physical symptom and that Plaintiff would be absent from work more than four days per month. (Tr. 693-94)

However, the treatment records beginning October 28, 2014 show Dr. Farzana diagnosed major depressive disorder, single episode, severe, with psychotic features and posttraumatic stress disorder. (Tr. 696-719) During Plaintiff's first visit, Dr. Farzana noted that Plaintiff experienced nightmares stemming from the loss of her family in the war in Bosnia. The mental status exam revealed Plaintiff was disheveled, obese, guarded, anxious, and depressed, with psychomotor retardation, flat affect, limited insight, and impaired concentration. (Tr. 707) In subsequent visits, however, Dr. Farzana noted Plaintiff was compliant with treatment and tolerated her medications well. Plaintiff's medications included Alprazolam and Remeron. She had no suicidal or homicidal ideation. (Tr. 696-705, 709-19)

The record shows that Dr. Farzana's treatment records do not document the markedly reduced level of functioning indicated on the checklist. "Opinions of treating physicians

typically are entitled to at least substantial weight, but may be given limited weight if they are conclusory or inconsistent with the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (citation omitted); *see also McDade v. Astrue*, 720 F.3d 994, 999–1000 (8th Cir. 2013) ("[A] treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement.") (quotation marks and citation omitted)); *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir.2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration). The Eighth Circuit has sustained the discounting of a treating physician's assessment because it supplied conclusory opinions consisting of a series of check marks assessing residual functional capacity, and because the assessment was contradicted by medical records. *Johnson v. Astrue*, 628 F.3d 991, 994–95 (8th Cir. 2011). Because Dr. Farzana's opinions were unsupported by objective tests and were inconsistent with her own treatment notes and other medical evidence in the record, the ALJ properly discredited the opinions. *See Choate v. Barnhart,* 457 F.3d 865, 870–71 (8th Cir. 2006) (finding that ALJ properly discredited physician's Medical Source Statement where treatment notes never mentioned restrictions or limitations to the plaintiff's activities); *see also Davidson v. Astrue,* 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

In her decision, the ALJ also discussed Plaintiff's daily activities, which included performing household chores, gardening, preparing meals, doing laundry, driving, and shopping for household needs. (Tr. 22) In addition, Plaintiff helped her children with homework, utilized a smart phone to send text messages and check social media, and attended religious services on holidays. (Tr. 19-20) An ability to engage in a number of daily activities detracts from

Plaintiff's allegations regarding the intensity and persistence of her symptoms.[4] *See, e.g.,*

*Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of

claimant's subjective statement of symptoms where the claimant took care of her child, drove,

fixed simple meals, performed housework, shopped, and handled money); *Goff,* 421 F.3d at 792

(stating that plaintiff was able to vacuum wash dishes, do laundry, cook, shop, drive, and walk,

which was inconsistent with her subjective complaints and diminished the weight given to her

testimony).  The ALJ may reject the opinion of the treating physician when there is conflicting

testimony in the record.  *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008).  This includes

testimony by the claimant herself.  *Id.*  If a doctor evaluates a patient as having more limitations

than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency in

evaluating and weighing the treating physician report. *Anderson*, 696 F.3d at 794.

In addition, the ALJ noted that Plaintiff remained on the same medication for her mental

impairments for a long period of time.  According to Dr. Farzana's treatment notes, Plaintiff's

medications were not adjusted, as she was compliant and tolerating the medications well.

Evidence that medication was effective in relieving her symptoms further supports the ALJ's

finding that Plaintiff's complaints of disabling depression were not fully credible.[5] *See Julin*,

826 F.3d at 1087.  Further, the record supports the ALJ's finding that Plaintiff only received

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. §§ 404.1529, 416.929.  This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

[5] The record also shows Plaintiff reported to Dr. Leonberger during both consultative examinations that the medications helped her mood unless she faced additional stress.  (Tr. 733, 742)

limited mental health treatment and did not require hospitalization or inpatient care. *See Mitchell v. Colvin*, No. 4:13CV131 CDP, 2014 WL 65386, at *27 (E.D. Mo. Jan. 8, 2014) (finding the ALJ properly gave the treating physician's opinion less than controlling weight where a claimant's self-reported extreme behavior would have likely resulted in more frequent psychiatric hospitalizations and would not have yielded normal mental status examination results).

Plaintiff argues, however, that Dr. Farzana's opinion is consistent with other examining physicians, Timothy Leonberger, Ph.D., Dr. Sanjeev Rao, and Dr. Emir Keric. The record shows that Dr. Keric, Plaintiff's primary care physician, referred Plaintiff to psychiatry on October 4, 2011, for evaluation of panic disorder, phobias from driving, and major depression. (Tr. 590-91) In November and December of 2011, Dr. Rao observed Plaintiff's appearance was calm and kempt, and her attitude was normal, attentive, and cooperative. Plaintiff displayed psychomotor retardation, with constricted affect and fair mood, insight, and judgment. Dr. Rao assessed panic disorder and somatoform disorder and prescribed medication. (Tr. 452-56) The record does not indicate any psychiatric treatment from December 2011 until October 2014, when Plaintiff presented to Dr. Farzana.

Dr. Leonberger conducted two consultative psychological examinations of Plaintiff at the request of Disability Determinations. The first was on January 10, 2017, during which Dr. Leonberger observed Plaintiff's mood was depressed and affect exaggerated. Plaintiff was sad but reluctant to admit things she enjoyed. Further, her attention and concentration appeared voluntarily limited. Plaintiff reported her mood was normal when she took medication. Dr. Leonberger noted Plaintiff's case was difficult to evaluate without psychiatric information, as Plaintiff appeared to exaggerate her symptomology and past history. Dr. Leonberger diagnosed

persistent depressive disorder with pure dysthymic syndrome and unspecified anxiety disorder. He found moderate impairments in Plaintiff's functional limitations. (Tr. 731-35) A Medical Source Statement of Ability to do Work-Related Activities (Mental) completed on that same date revealed mild to moderate restrictions in Plaintiff's ability to understand, remember, and carry out instructions, and moderate restrictions in her ability to interact appropriately with others or respond to changes in a routine work setting. However, Dr. Leonberger was unable to support his assessment, as he noted Plaintiff did not put forth much effort on the cognitive portions of the evaluation. (Tr. 728-29)

On May 8, 2017, Plaintiff reported her medications had not changed and helped unless she faced additional stress. Dr. Leonberger observed Plaintiff was mildly depressed with normal affect, fair attention and concentration, and limited insight. Dr. Leonberger agreed Plaintiff had depression and anxiety, but she did not qualify for a diagnosis of PTSD or exhibit psychotic features as found by Dr. Farzana. Dr. Leonberger again assessed persistent depressive disorder with pure dysthymic syndrome and unspecified anxiety disorder. He found moderate to marked functional limitations. A new Medical Source Statement of Ability to do Work-Related Activities (Mental) noted marked limitations in the ability to carry out complex instructions and make judgments on complex work-related decisions. Dr. Leonberger noted Plaintiff had difficulty with attention and concentration due to her anxiety and depression. Plaintiff also had marked limitations in her ability to interact with others and respond to changes in the routine work setting due to her depression and social withdrawal. (Tr. 738-43)

In assessing Dr. Leonberger, the ALJ gave the second opinion regarding marked limitations minimal weight since Plaintiff did not allege mental health impairments on her application, and she did not have a significant mental health history or mental health treatment.

(Tr. 23)  The ALJ noted, "Dr. Leonberger only examined claimant on two separate occasions, and there is nothing persuasive in the record to support this degree of limitation, particularly in light of the claimant's self-reported level of function and her demeanor at the hearing."  (*Id.*)  The Court notes that a "[a] single evaluation by a nontreating psychologist is generally not entitled to controlling weight."  *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (citation omitted).  "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record."  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

Dr. Leonberger explicitly noted his diagnosis was not consistent with Dr. Farzana's.  Further, Dr. Leonberger's opinion is based on Plaintiff's subjective complaints, as the mental status exam and behavioral observations were primarily within normal limits with some mild limitations.  (Tr. 742)  The ALJ may give less deference to an opinion based upon a claimant's subjective complaints rather than objective medical evidence.  *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).  Additionally, Dr. Leonberger noted, as did the ALJ, that Plaintiff seemed to be exaggerating her symptoms.  An ALJ may discount a plaintiff's allegations where evidence indicates the plaintiff is exaggerating symptoms for financial gain.  *Davidson*, 578 F.3d at 844 (citation omitted).

Based on the evidence in the record, the ALJ determined Plaintiff had some limitations, as set forth in the RFC, but not to the degree proffered by either Dr. Farzana or Dr. Leonberger.  While Plaintiff argues the opinions of Drs. Farzana and Leonberger are consistent, thus warranting controlling weight with respect to Dr. Farzana's opinion, the Court finds the internal inconsistencies between Dr. Farzana's opinions in the questionnaire and her treatment records,

Plaintiff's functional ability, Plaintiff's limited level of treatment, and the alleviation of symptoms from medication support the ALJ giving Dr. Farzana's opinion minimal weight.

Here, the Court finds substantial evidence supports the ALJ's determination that the severe limitations opined by Dr. Farzana are not supported by the totality of the evidence on the record and are inconsistent with the record as a whole. Therefore, the ALJ did not err in failing to afford Dr. Farzana's opinion controlling weight. Moreover, the Court also finds the application of the factor test set forth under 20 C.F.R. § 404.1527(c) supports the ALJ's finding that Dr. Farzana's opinion was entitled to minimal weight. Pursuant to 20 C.F.R. § 404.1527(c), the amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors.[6] Although Dr. Farzana's opinion might have been afforded more weight pursuant to the first two factors, because she was a treating source who had examined Plaintiff several times, the ALJ was entitled to accord her opinion less weight based upon the remaining factors, particularly the "supportability" and "consistency" factors. The ALJ discusses in detail the medical evidence as well as other evidence of record supporting mild to moderate limitations versus the disabling limitations opined by Dr. Farzana. Because the ALJ's determination is

---

[6] The ALJ stated in her decision that she considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. (Tr. 21) Although the ALJ did not address each factor individually, she thoroughly reviewed the medical and other evidence of record, then addressed the supportability and consistency factors in her Decision. *See Morris v. Berryhill*, No. 1:17-CV-00212-NCC, 2019 WL 1129990, at *10 (E.D. Mo. Mar. 12, 2019) ("[A]lthough the ALJ did not explicitly discuss all of the factors listed in §§ 404.1527(c) and 416.927(c) in evaluating [the doctor's] opinion, contrary to Plaintiff's contention, he was not required to do so."); *see also Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D. Mo. 2012) (finding the ALJ's failure to perform a factor-by-factor analysis of 414.1527 was not erroneous where the ALJ's decision stated he had considered those factors and explained his rationale in a manner that allowed the court to follow the ALJ's line of reasoning, including stating the amount of weight given to the evidence).

supported by good reasons and substantial evidence, the Court must defer to it.  *Julin*, 826 F.3d at 1086.

### 2. The ALJ Failed to Properly Evaluate Complaints of Pain

 Next, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.  Plaintiff contends the ALJ failed to make an express credibility determination detailing the reasons for discrediting Plaintiff's testimony.  When a claimant argues that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all the evidence relevant to plaintiff's complaints under the *Polaski*[7] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony.  *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted).  If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion.  *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995).  The evaluation of a claimant's subjective statements about symptoms is the province of the ALJ, and so long as "good reasons and substantial evidence" support the ALJ's evaluation, courts will defer to her decision.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  An ALJ may decline to credit a claimant's subjective complaints "if the evidence as a whole is inconsistent with the claimant's testimony."  *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

---

[7]  The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'"  *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

The ALJ assessed Plaintiff's knee pain in accordance with 20 C.F.R. 404.1529 and found the objective medical evidence did not support the severity of the Plaintiff's complaints. (Tr. 22) The ALJ noted Plaintiff's extensive daily activities, as set forth above. "Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging . . . such complaints." *Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016); *see also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain). In addition, Plaintiff did not require an assistive device, and on at least one occasion was observed wearing heels. Objective tests showed a positive grind test, but the stability of her knee joints was intact with full range of motion in both knees. Imaging revealed only mild arthritis in Plaintiff's knees. (Tr. 22)

According to the medical records, Plaintiff first complained of knee pain in September of 2014. Dr. TinaRose Trost noted normal joint appearance, with no effusion and normal range of motion and strength. Left medial joint line pain and left medial pain were present. Dr. Trost assessed osteoarthritis and recommended Tylenol and Glucosamine for arthritis pain. (Tr. 335-38) On January 26, 2015, Plaintiff reported that a previous steroid injection was not helpful, and the pain was constant, worse when walking down stairs. Dr. Trost noted Plaintiff mostly wore tennis shoes but was wearing heels on that date. Physical exam was normal, with no effusion, joint line tenderness, or swelling. Dr. Trost ordered x-rays to rule out a medial meniscal tear. (Tr. 676-78) On April 30, 2015, Dr. Trost noted Plaintiff was again wearing heels. Physical exam of Plaintiff's knees was normal, and Dr. Trost recommended weight loss. (Tr. 671-73) On December 11, 2015, Dr. Trost noted Plaintiff's x-ray was normal; however, Plaintiff continued to

have pain in her right knee. Dr. Trost referred Plaitniff to orthopedics for assessment of right

knee pain and concern for a meniscal tear unresolved with conservative therapy. (Tr. 662-64)

On January 11, 2016, Plaintiff started treatment with Dr. Dale Doerr, an orthopedist. Dr.

Doerr noted full range of motion of both knees with no tenderness. There was positive patella

grind test and positive McMurray's grind test bilaterally.[8] X-rays showed mild patellofemoral

osteoarthritis but were otherwise negative. Dr. Doerr's impressions were chondromalacia of the

patella, bilaterally, and right knee internal derangement, most consistent with a meniscal tear.

Dr. Doerr ordered an MRI and placed Plaintiff on Aleve. (Tr. 600-02)

The MRI of the right knee revealed no acute meniscus or ligament injury, no focal

chondral defect or abnormal bone marrow signal, and an edematous suprapatellar fat pad which

may represent sequela of impingement. (Tr. 618) Dr. Doerr prescribed Nabumetone. (Tr. 604)

On February 29, 2016, Dr. Doerr noted positive patella grind test bilaterally with full range of

motion and stability of both knees. He found mild swelling of the right knee and mild joint

effusion, but no swelling, warmth, or erythema about the left knee. Dr. Doerr administered a

cortisone injection in the right knee. (Tr. 605-06) On March 28, 2016, Plaintiff reported her

right knee was better with the injection and requested an injection in the left knee. Two months

later, Plaintiff was doing a little better with the injections and the anti-inflammatories. Dr. Doerr

noted bilateral patellofemoral grind test. Both knees were stable, but Plaitniff had decreased

---

[8] "The purpose of [the patella grind] test is to detect the presence of patellofemoral joint disorder (patellofemoral pain syndrome, chondromalacia patellae, patellofemoral DJD). This test is also known as Clarke's Test. . . . A positive sign on this test is pain in the patellofemoral join." Physiopedia, https://www. https://www.physio-pedia.com/Patellar_Grind_Test (last visited September 11, 2019). "McMurray's test is used to determine the presence of a meniscal tear within the knee." Physiopedia, https://www.physio-pedia.com/McMurrays_Test (last visited September 11, 2019).

strength of the VMO muscle.  Dr. Doerr recommended physical therapy for rehabilitation of both knees.  (Tr. 607-10)

When Plaintiff returned to Dr. Doerr on June 20, 2016, she complained of more difficulties with her knee pain bilaterally.  She was unable to find a physical therapist who accepted her insurance.  Dr. Doerr noted bilateral crepitance with range of motion and bilateral patella grind.  Plaintiff's knees were stable with intact sensation and circulation.  There was mild swelling and mild joint effusion, as well as decreased range of motion.  Dr. Doerr administered cortisone injections.  (Tr. 614-15)  On October 25, 2016, Plaintiff reported improvement with the cortisone injections and requested that Dr. Doerr repeat the injections.  (Tr. 720-21)

The Court finds that the ALJ properly considered all the evidence in the record before her, which included Plaintiff's in-person testimony during the hearing about her subjective symptoms as required by SSR 16-3p.  (Tr. 21)  The ALJ also gave specific reasons for discounting Plaintiff's subjective complaints.  *See Wiese v. Astrue*, 552 F.3d 728, 733–34 (8th Cir. 2009) (affirming the ALJ's conclusion that the claimant's subjective complaints of pain were not entirely credible where the opinion set forth the inconsistencies between the medical evidence, [claimant's] own claims, and [claimant's] daily activities and formed the basis of the ALJ's finding).  The ALJ noted Plaintiff's daily activities were inconsistent with her claims of disabling pain.  (Tr. 22)  Further, the objective medical evidence did not support Plaintiff's allegations of disabling levels of knee pain, as Plaintiff's knee joints were stable; motor strength, sensation, and reflexes were normal, and the MRI showed only mild arthritis in Plaintiff's knees. (Tr. 22, 604-18, 720-21)

"As is often true in disability cases, the question [is] not whether [Plaintiff] was experiencing pain, but rather the severity of her pain." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th

Cir. 2001).  An ALJ has a statutory duty to assess the claimant's testimony regarding her symptoms, "and thus, an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances."  *Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 589-90 (8th Cir. 2004)). The Court therefore finds substantial evidence supports the ALJ's determination that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21)

### 3.  The ALJ Failed to Properly Consider Obesity

Plaintiff's final claim is that the ALJ failed to consider how obesity would affect her RFC with respect to Plaintiff's bilateral knee osteoarthritis.  The record belies this assertion, as the record shows the ALJ addressed Plaintiff's mild obesity, which was just reaching the threshold of clinical obesity.  (Tr. 22)  The ALJ found Plaintiff's level of independent functioning was inconsistent with a finding of disability despite her mild obesity.  (*Id.*)  The ALJ further accounted for Plaintiff's obesity in determining her RFC.  The ALJ's RFC finding includes limitations to only light work with further postural limitations including never climbing ladders, ropes or scaffolds, never crawling, and only occasionally climbing ramps and stairs, balancing, stooping, kneeling and crouching.  *See Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding the ALJ properly considered plaintiff's obesity where the ALJ referred to obesity in evaluating the claim and took that condition into account when denying benefits).  Thus, the Court finds the ALJ properly considered obesity in her determination.

**Conclusion**

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id. See also Buckner*, 646 F.3d at 556; *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. The Court may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Dzemila Topalovic's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

So ordered this 11th day of September, 2019.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE